argument in the next case which is United States v. Lii. I suspect it's Lii, is that right? Yes, Hawaiian pronunciation. Yes. You may proceed. Thank you, Your Honor. Deanna Dotson on behalf of appellant Mr. Lii. I'm not going to attempt to say his whole name. This case has some really troubling areas. I'm going to start with the separation of powers doctrine and that one principle it says where this doctrine may be violated is one branch interferes impermissibly with the other's performance of their constitutional power. And in this case, the executive branch, which is the prosecution, did interfere with the judicial branch's ability to render a sentence and use its discretion to determine that sentence. In the transcripts, it's very evident where the judge many times says that he has no discretion in the sentencing. Well, I don't think he did have any discretion in sentencing, didn't he, under 851? I mean, that's the whole idea of 851 was to eliminate judicial discretion. One may argue about the policy of that, but that's a congressional choice, wouldn't you say? Well, it's a congressional choice, but I don't think it says that it takes away the discretion of the judge, particularly under Booker when now the guidelines are advisory and 851 is merely telling the court that we're recommending, it should only be a recommendation that because of we're saying he had two prior drug convictions which qualify for the 851, so therefore the court must sentence life and takes all discretion away. And I think that is a separation of powers problem because then why have a judge? Why not just file the paperwork? So you basically have to strike down 851. I think that not necessarily strike down 851, but maybe the mandatory aspect of 851, saying that the judge must follow the dictates without looking into exactly was this justified and looking at the total circumstances of the case, because 851, the enhancement features of 841, which 851 is, is based on trying to punish the judge. Those high traffickers, those people that have been involved in drugs many times have had two prior convictions for serious drug, even though they don't use that term, serious. I don't find that in the statute. It's not in the statute, and I think that's a problem, but it is where one of the cases in, I believe it was Chapman, stated that in the congressional legislative history of the enhancement portion of 841, its purpose was to hit major drug traffickers, not the small ones. We don't even have a small drug trafficker here. We have a person that was, had a drug addiction almost his entire life. But the courts, I mean, if Booker has any relevance that the guidelines are now advisory and that the courts now have discretion, then how can a statute like 851 completely take that discretion away? I mean, he wasn't even allowed, and he stated, well, I don't have to look at the 353 factors, because I don't have any discretion, so that's not an issue. Well, why even have a judge then in this case if 851 is going to automatically dictate what the court can do? And I think that is a separation of powers issue. But if we accept your argument, we basically have to strike down all mandatory minimum sentences, right? I think 851 is a little different than a mandatory minimum sentence. How so? In theory. Because on a mandatory minimum sentence, you still can, the judge still has discretion. I think that under Booker even, even though Booker, the courts have said that Booker doesn't apply to mandatory minimums. However, it doesn't say that the courts has lost its discretion to consider the 353 factors. It doesn't say that the courts has lost its discretion to consider the 353 issues or lost its discretion to go below and depart below that mandatory minimum. If they so, you know. Well, if there's a safety valve issue, that's one thing, but the district courts don't have the authority, you would agree, to ignore the mandatory minimums if there's absent a safety valve application. In other words, the courts are still confined by the statutes. I guess I'm arguing that 851, if the prosecution mandates to the court that they have to give a life sentence, that that takes all power out of the judicial branch to even consider is this justified. It takes all discretion away. Yes, and my question is how does that differ from mandatory minimums? Now, certainly that's not necessarily a product of prosecutorial discretion, but it is in the sense that the prosecutor charges the crime and then the mandatory minimums kick in. So what's the difference? Well, because I think a life sentence is a little harsh to have the court not have any capability or discretion to take a look at it. Is that our decision or is that Congress's decision? You know, we have a separation of powers. Correct. And Congress lays down what is criminal conduct and Congress has the power to lay down what the sentencing is going to provide. Correct. But the court can take a look at what Congress says that the court has discretion, that's one thing. But when it makes it mandatory, that's something else. Correct. But the court, the judicial branch does have the power to interpret the laws that Congress has made and declare whether or not they are constitutional or not. So if this court decides that this was a violation of separation of powers, then that's a step towards that decision in changing the 851. Did you make that constitutional argument to the district court? I wasn't in the... I mean, was the argument made? I believe the argument of separation of powers was made in the district court, Your Honor. I don't have the exact site, but I believe it was made to the district court. Ms. Dodson, I know this is a different situation, but if we followed your argument through to conclusion, would a state be able to have a three strikes law? Yes, and the three strikes laws have been addressed in Cunningham in the latest case, saying, yes, you can have them. However, you still have to follow certain... I know, but you were talking about a judge's discretion, and the three strikes law takes that away, doesn't it? No, because they still have the discretion to sentence within the boundaries of whatever that three strikes. Here, there is no discretion. Third strike quite often makes a very otherwise somewhat minor charge life with a life sentence. Well, maybe the last charge was a minor charge, but are you speaking of the Andre case? The previous criminal history, though, is what gets on the three strikes law, gets to that point. I don't want to take you away from your argument. I was listening to your argument, and I'm wondering, all right, let's assume we agree with you. Then I think we automatically would be going against a decision that says three strikes is all right. Well, I disagree with you, Your Honor, because I don't think it goes against the three strikes, because, again, the three strikes, you still have discretion to sentence within the three strikes parameters, and the judge still can look at those three strikes. The judge can't go above what those guidelines are dictated under the state for those three strikes. That's what Cunningham stated, I believe. But I think it's important that the judge has the discretion. And this gets into, I'd like to talk about the vindictive prosecution, because by filing that 851 on two very minor drug convictions, I think gives the appearance of a reasonable life sentence. And there's a likelihood that this was for vindictive reasons. Because if you look at what the underlying drug offense is, I mean, this person has a drug problem. It's a history. He has a history. The first drug conviction was for selling $50 of cocaine. He was an addict. The second one was because he tested dirty, because of that conviction he was on probation. Tested dirty, they did an unannounced search, and they found drugs, small amounts of cocaine. Small amounts that are only for someone that's using, not for someone that's selling. That's his second drug conviction. Those two drug convictions are what form the basis of this life sentence. I mean... But why is that necessarily vindictive? It may be a difference of opinion in prosecutorial discretion. But usually in our vindictiveness cases, there's something that the defendant's doing in that case. They're trying to punish, either not pleading guilty or something like that. What is there in this case that would indicate that this was done for vindictive purposes? Okay. Mr. Lee, when he was caught, okay, I'm caught. I did it. He didn't fight it. He gave information to the investigators. I'd like to just go through a little timeline. In March he was arrested. In May he met with the government investigators. He gave all the information that he had. In June he had some other information. He wrote a letter. The attorney then attached his letter and sent it on to the government, outlining more information that he had. He was willing to give whatever he had. The problem is this, is that the prosecutor on this case was also the prosecutor on his brother's case. The brother was now out on supervised release. There were two U.S. attorneys, the supervisor and the present U.S. attorney on this case. They were both on the brother's case. The one supervisor was on his, Mr. Lee's felon in possession of a firearm case. That was in 95. The thing is, or excuse me, 97, they had his complete criminal history background. If they, there was no evidence in the record that they were negotiating a plea agreement, so if you don't sign the plea agreement, then I'll bring this 851, which is normally the case, they use that kind of as bait, well, if you don't do this, we'll do this, that's our carrot we're going to dangle in front of you. There's no evidence of that, because Mr. Lee, he didn't say he wasn't willing to cooperate. He was. Okay, July they filed the 851. There was a plea agreement, and it was not part of the record, but it was faxed to the judge with a letter. And it was signed by both these same U.S. attorneys, the one on the, the main one on the case and the supervisor that were also involved in his previous case and the brother's case. They wanted information about his brother, because now he was out on supervised release. And he was part of, the brother was part of a large drug conspiracy. Mr. Lee, he wasn't any part of that. He didn't know anything about his brother. He's a member of nine children in the family, so, you know, just because he has one brother that he has some involvement in drugs doesn't mean that he knows anything about it or has contact. What's upsetting is in this plea agreement, there were no concessions, because he was still going to get life. The government wasn't going to reduce that, and normally if you file a plea agreement where somebody's agreed with something, you're going to reduce, give some benefit. But this was filed after they had filed the 851. He didn't agree to file. I mean, he didn't sign that plea agreement. The plea was faxed over on the 22nd of August, the plea hearing was the 24th, two days later. Mr. Lee, he just strut up pled. He just pled guilty with no plea agreement, with no, you know, trying to get any kind of benefit. So I think if you put all of this together, I think it does have a reasonable likelihood that there was some vindictiveness or some feelings against this person, that they were not willing to do anything to negotiate anything, but just wanted to go forward with life on someone that doesn't deserve life. These two minor drug convictions for his addiction, and he still had an addiction. If you look back on his state felon in possession, during that time period, a few months before that, it was found he had tested for three different drugs. So he had an occurring drug problem that never was taken care of. And to put this person in life, in prison for life, for an addiction, I think is uncalled for and a waste of our... In order to do what you want us to do, what do we have to decide, in your view? I think you have to decide that there was vindictive prosecution in this case. But let's assume just for the moment, and I know you don't agree, that we don't see a basis for deciding vindictive on this record. What else? Then I think in the briefs there's a serious argument about the Eighth Amendment, that if you look at other drug cases, similar drug cases and the charts that I supplied across, you know, the country, a life sentence is just not warranted for this particular type of defendant with a particular drug history he has, his drug convictions. It just is not warranted a life sentence. He's 40 years old, he's going to be spending the rest of his life behind bars for a drug addiction, essentially. Did he know it? I don't believe that he fully comprehended the fact that he was going to get life, because all of his other sentences... No, I don't mean personally did he know it. Were the consequences established before he did the act? Before he did the act? Before he did his third act. Before he had 50 grams of meth to distribute. I don't believe that he understood that at all, because his prior convictions, except for the felon in possession, were state. He served most of it, he would get probation, then he would violate it, so then he'd go and get a prison term, then he'd be released. But I don't know that we're going to decide on what one knows. I don't think we decide on whether it was established, don't we? I don't think it was established that he had any idea that by pleading, even by pleading guilty to this, that he was going to be in prison for the rest of his life. I don't think he understood that or even knew that, and I don't think that was established. And I think by the prosecution being unwilling to even enter into any discussions, not even responding to letters, by just being totally, I'm filing this, that's it, you don't give me what I want, then you're going to serve the rest of your life in prison, and that's essentially how it went. And I just think that is another indication of vindictiveness, that, you know, there has to be a give and take. There has to be, well, let's talk about it. Okay, you've written me this letter, then let me respond to your letter. I think that's only common courtesy in ethical behavior also, that, and to consider, does this offense really, and does this criminal background really warrant life? If you take a look at the guideline sentence of what he would have gotten based on his criminal history, which would take in his entire criminal history, you know, 188 months would be the top that he would have been able to receive under the guidelines. So 88 months, 188 months to life without any type of bargaining or working or trying to understand what's going on with this client is, I think... He can always petition for a pardon. Pardon? He can always petition for a pardon. You say there's no relief. That's about as likelihood as getting a petition for service. You made it absolute. I just put a condition on it. Thank you for your argument. I'm here from the government. Good morning, Your Honors. Beverly Wiesamashima on behalf of the United States. And I can't let this go unaddressed, but one of the major procedural problems in this case is that the only issue that the defense raised below was the separation of powers issue. That was the only objection and that was the only thing that was preserved below. And the defense doesn't talk about the Ninth Circuit case law and all the other case law where that issue has already been settled. Basically, it's a valid exercise of Congress to establish statutory mandatory minimums, and essentially the defense is asking you to overrule those precedents. Now, the other two issues... I think Kinsey talks about 841, and that's as close as you can get at this point, Your Honor. We don't have anything precisely on 851, but... The same rationale I think would apply, Your Honor. I don't see any reason why it would be different. But I take exception to counsel's inference that I was unethical or that there was prosecutorial vindictiveness. I don't think she said you were unethical. I think she suggested it because I didn't respond to letters. You may be super sensitive. I didn't hear her say you were unethical. I think she was saying we wrote letters, we wanted to negotiate, and the government didn't want to negotiate. Well, Your Honor, I think I do take exception to that because none of that is of record. And I don't know if this Court is aware, but I did file a motion to strike certain of the excerpts below, which, you know, hadn't been decided. But she threw in a lot of information that, without my ability to also provide the Court with some record, I feel that that, and that's the whole reason we have plain error also, Your Honor. She did not raise, or it was not raised below, any of the issues with respect to prosecutorial vindictiveness. I think she was talking generically about the system, that it was unethical, and the system that people didn't negotiate. I don't, I didn't take it to that. That's not even accurate. Well, no, no, I'm just trying to, anytime the word ethical is used or unethical in an argument, I always see the other side stand up and want to defend it, but it's not necessary here, I don't think. We're used to being attacked, but, you know, I am a little bit sensitive. So why a life sentence in this case? Excuse me? I mean, I understand your, the 51 procedure, but could you just tell us why you think a life sentence was appropriate in this case? Well, Your Honor, I, my office is a fairly strict follower of the Ashcroft memo. So it's a maximum provable charge, is that it? And I think we also look, because when the defense did request, and, again, I'm referring to sort of off-the-record matters, but when the defense did request us to reconsider, it was. It was seriously reconsidered throughout our office, both with my immediate supervisor as well as the criminal chief. And we looked at Mr. Lee's record, and that record speaks so loudly that he is a recidivist, that he seemed to fall within the confines of the memo and did not fall within the extraordinary circumstances which would warrant our doing a memo and setting forth the reason we would not follow the policy. So we did consider it. Mr. Lee had not only the two prior drug felonies, which, although admittedly they might have seen minor, if you look at them, the first one, he was revoked four times. He had an opportunity to actually get it expunged under the state law, a deferred acceptance guilty plea, and within five months he had already been violated, he revoked, and then he got another chance, he got revoked again, he got another chance, he began to sell drugs in a rehabilitation setting, a drug treatment setting, and he was revoked. And you look at his second drug conviction, similarly, he was revoked three or four times, and then he had two firearm charges and a litany of other type of charges. So his criminal history did not justify, did not place him in that category where it was appropriate to take, to make an exception. Mr. Lee No, but I think it's quite true that if you took his criminal history and put it on a straight guidelines calculation, he really is looking at less than 200 months, isn't he? Ms. Atkins Yes, 188 at the high end. Mr. Lee 188 is accurate, I think, isn't it? Ms. Atkins Yes, Your Honor. Mr. Lee So, I mean, you're saying it justifies that, but then when we look at ordinary cases removing 851 considerations, it's not a life sentence. Now, are you, I mean, is the Ashcroft memo still operative in your office? Ms. Atkins It is, it is, Your Honor. Yeah. And that's not to say we don't have exceptions to it, but this particular case did not present, in my office's view, the exception to that. Mr. Lee Do you want to, I realize we review for plain error, but would you address the vindictiveness issue for us? Ms. Atkins Well, I had a very difficult time seeing what action on my part was the vindictive act. Again, I think the cases that we cited, the Van Doren and the Ordono case, talked about specific acts. The Jenkins case talks about filing it after somebody went to trial. I think that's clearly ---- Mr. Lee Well, I think we can go from what's been argued and what we know, what the record indicates. Let's assume that there was some desire to prosecute a brother, and that was an assumption that the accused knew that the brother was guilty. And that the accused knew some information that he wasn't sharing. Would that be a basis for vindictiveness? Ms. Atkins First of all, there's no evidence of that. While it's true, my colleague, my supervisor, Ms. Nakakuni, prosecuted Francis Lee, the brother, over 10 years ago. That was a separate, large, strike force case. I was not at all ---- Mr. Lee No, I'm not suggesting that's so. But when you said there's no basis for vindictiveness, I'm wondering if that wouldn't be a basis to argue vindictiveness. That's all. Ms. Atkins There was no quid pro quo. At no time did we ever say, well, Mr. Lee, tell us about your brother and we won't file the 851. I mean, there was no discussion of any kind based on that. What I did tell the defense attorney always was that I must follow the policy and then the way to get from under that would be to cooperate such that I could file a 5K motion based on substantial assistance, or obviously he doesn't qualify for a safety vow, but the way to get from under that would be to file a 5K motion. And, you know, if you have any information, if you can provide us information about your source. But it wasn't used to say, okay, you're not going to give it to us, so I'm filing the 851. That was not the situation. And I just don't see any basis for that kind of claim based on the facts in this case. I think we have the argument at hand. Any further questions? No. Thank you. Thank you. And I just want to make one comment about the District of Hawaii's policy. I only handle appeals, and I've had one other client that has received a life sentence, and that he went to trial, and that was a life sentence, and he went to trial, we're going to file this. Excuse me. I've had many clients that have had horrendous criminal histories, but the 851 was not filed on them. A life sentence was not asked for them. So I believe, Your Honor, that with this particular situation, there was vindictiveness. They did want something more, and there was no reason to file the 851 based on his criminal history. Yes, he had many violations for his original drug offenses. Excuse me, Your Honor, but it was because of his addictions. You see, you talk about his addiction, and I'm certainly not going to. We can't make a finding that he's not addicted. We don't know. But he was selling as well as using. He sold in his first one $50 worth. That's it. That's what you know. That's what's in there. That's correct. But that's what the point is. This isn't a situation of pure using. It's a situation of using and selling, isn't it? Not much selling. He got in. I'm not saying how much. It's like how much pregnancy. Well, I think there is a difference, though, because this last case, he had a situation where he was on supervised release, out of work. And it wasn't just one selling. He sold twice, and that is in the record. Once, a little bit, and then the same person wanted to buy a little bit more. He was hesitant on doing that, and unfortunately, he didn't have the strength because he needed the money. He didn't have the strength to say no, and that's an unfortunate circumstance. Had he known, I think, that he would be facing life? The record might be the same, using or selling, but I'm saying, as you talk about his situation, and we have to look at the record, we see what we see. Right. I wish there was a way, Your Honor, that I would have access to the District of Hawaii's U.S. Attorney's Office, a number of 851 life filings that they've made, versus the number of cases that they handled in the past. I don't have access to that, but I think you'd find that they don't follow that Ashcroft memo as, two drugs, we're going to file for life. I don't believe that's happening. That's beyond the record of this case. And there are districts who follow the Ashcroft memo rather strictly, and some don't. And those that do have situations in which the sentences, in some cases, seem disproportional to. So we can't solve the Ashcroft memo here today, or the consequences of that. As to your other issues, constitutionality and the rest that you raise, of course, we'll take those seriously. Thank you both for your arguments.
judges: Farris, Beezer, Thomas